IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 8:18CV453 |
| v. | |
| JAMES WIDTFELDT, | MEMORANDUM AND ORDER |
| Defendant. | |

This matter is before the Court on the government's motion (Filing No. 52) to hold defendant James Widtfeldt ("Widtfeldt") in civil contempt for violating this Court's October 21, 2019, Order of Sale (Filing No. 46). In response, Widtfeldt has filed four documents (Filing Nos. 55-58), ostensibly resisting the government's motion for contempt and challenging the Court's prior orders in this case on the merits. For the reasons stated below, the government's motion is granted in part and denied in part.

I. BACKGROUND

A. Widtfeldt and this Case

Widtfeldt, an attorney indefinitely suspended from practicing law in Nebraska for filing irrelevant and abusive filings and motions, represents himself in this matter. Widtfeldt has repeatedly and relentlessly tried to relitigate his federal tax liabilities and sue parties over various conspiracy theories, often involving Lyme disease. *See Widtfeldt v. Comm'r of Internal Revenue*, 8:13cv79, 2013 WL 878449, *1 (D. Neb. Sept. 5, 2013) (collecting cases to that date); *see also Widtfeldt v. City of Atkinson*, 8:18cv150, 2018 WL 3553354, *1 (D. Neb. July 24, 2018) (discussing Widtfeldt's allegations of a "far-reaching conspiracy against him").

On September 26, 2018, the government sued Widtfeldt in this Court to reduce to judgment Widtfeldt's unpaid federal gift and estate taxes, *see* 26 U.S.C. § 6324, and to enforce that judgment against real property owned by Widtfeldt, *see id.* § 7403.

After a deluge of filings, on September 17, 2019, the Court issued (Filing No. 43) a Memorandum and Order ("Memorandum and Order") granting summary judgment in favor of the government, finding Widtfeldt liable for the unpaid taxes and authorizing the government to enforce Widtfeldt's tax liabilities against two real properties owned by Widtfeldt (referred to as River Place and Rock Falls Place).[1] *See id.*; 28 U.S.C. § 2001. The Court entered a separate judgment (Filing No. 44) consistent with those findings.

The government then requested (Filing No. 45) that the Court enter an order of sale for River Place and Rock Falls Place. The Court granted (Filing No. 46) the government's application and ordered the sale of those properties, *see* 26 U.S.C. § 7403(c); 28 U.S.C. §§ 2001 and 2002, under certain terms and procedures ("Order of Sale"). In that order, the Court specifically prohibited Widtfeldt from taking any action "that may directly or indirectly tend to deter or discourage potential bidders from participating in" a public action of the properties. The Court warned that violating those terms could be "deemed contempt of court and punishable as such." Widtfeldt appealed (Filing No. 47).[2]

---

[1]The precise legal description of the properties is laid out in the Memorandum and Order.

[2]The government notes Widtfeldt clearly has knowledge of the Court's prior orders as the Clerk of Court mailed them to him and he attached copies of them to his motions to the Eighth Circuit. The government also notes the Eighth Circuit denied Widtfeldt's request to quash the Order of Sale and terminate a notice of sale by the government. *See United States v. Widtfeldt*, Case. No. 19-3372, Entry ID 4884376 (8th Cir. Feb. 24, 2020).

2

**B.     Attempted Sale**

On January 8, 2020, the government prepared to sell River Place as authorized by the Order of Sale. The government ran a publication at a cost of $201.08 in a local newspaper to give notice of a public auction set for March 5, 2020, at the Holt County Courthouse. The government alleges that before the scheduled sale, Widtfeldt (1) "contacted potential bidders and told them the sale was invalid and threatened them with litigation if they attended the sale," (2) ran local radio announcements "criticizing the sale and threatening legal action against participants," (3) filed a complaint in the District Court of Holt County, Nebraska ("Holt County action"), to serve on bidders and participants at the sale,³ (4) threatened legal action against the sale participants "[a]t the courthouse on the morning of the sale," and (5) had three people—the government agent facilitating the sale and two bidders—served "with the state court's summons and complaint."⁴

The government reports "[b]idding at the sale was minimal and the sale was unsuccessful." According to the government, it incurred $1,599.49 in travel costs for the unsuccessful sale and will now have to attempt to sell the property again at further cost.

The government submitted an index of evidence (Filing No. 54) supporting its allegations consisting of (1) a declaration by the government official assigned to sell the properties attesting to this information, (2) its notice of public auction sale, (3) a partial

---

³The government since removed the Holt County action to this Court (Filing No. 1 in 8:20cv125) and filed a Motion to Dismiss (Filing No. 4 in 8:20cv125), which the Court granted (Filing No. 7 in 8:20cv125). *See Widtfeldt v. Corkle*, 8:20cv125 (D. Neb. 2020). The government requests the Court order Widtfeldt to dismiss the Holt County action as part of its relief in this case, but that request is moot in light of the Court's order.

⁴On February 6, 2020, Widtfeldt also sued various government officials and me, *see Widtfeldt v. Internal Revenue Serv.*, 8:20cv87 (D. Neb. 2020), which is pending before another judge and subject to a motion to dismiss. The Court considered in detail in *Widtfeldt v. Corkle*, 8:20cv125, whether Widtfeldt's lawsuit and other allegations against me require recusal and determined they do not.

transcript of Widtfeldt's radio announcement (which Widtfeldt filed in the Holt County action), and (3) the complaint, summons, and other documents related to the Holt County action.

Widtfeldt has not denied the government's allegations.

The government requests the Court order Widtfeldt to (1) immediately compensate the government its costs from the thwarted sale ($1,800.57), with a $1,000 daily fine for each day the amount goes unpaid and (2) be enjoined from (a) filing further actions and "misrepresenting this Court's authority with respect to the property or the Order of Sale" and (b) continuing to discourage potential bidders. The government further requests that, if the government notifies this Court that the daily fine in this case has reached $10,000 or Widtfeldt has further violated this Court's orders, the Court immediately incarcerate Widtfeldt until the properties are sold.

## II. DISCUSSION

### A. Jurisdiction

As a general rule, "an appeal to the circuit court divests the district court of jurisdiction as to those issues involved in the appeal." *In re Grand Jury Subpoenas Duces Tecum*, 85 F.3d 372, 375 (8th Cir. 1996). But it is well-established that, absent a stay, the Court "retain[s] jurisdiction to enforce its judgment" and may consider a motion to hold a party in contempt. *Chaganti & Assocs., P.C. v. Nowotny*, 470 F.3d 1215, 1223 (8th Cir. 2006).

### B. Contempt

The Court has the inherent power to enforce compliance with its lawful orders through civil contempt. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 ("[I]t is firmly established that 'the power to punish for contempts is inherent in all courts.'" (quoting *Ex parte Robinson*, 86 U.S. 505, 510 (1873)); *see also Shillitani v. United States*, 384 U.S. 364, 370 (1966) (recognizing the same). In other words, the Court may hold a party in

4

civil contempt for failing "to comply with a 'clear and specific' underlying order." *Chaganti*, 470 F.3d at 1223.

"One of the overarching goals of a court's contempt power is to ensure that litigants do not anoint themselves with the power to adjudge the validity of orders to which they are subject." *Chi. Truck Drivers v. Bhd. Labor Leasing*, 207 F.3d 500, 504 (8th Cir. 2000). "It is well established that until a court's 'decision is reversed for error by orderly review . . . its orders based on its decision are to be respected, and disobedience of them is contempt of its lawful authority.'" *United States v. Ali*, 682 F.3d 705, 708 (8th Cir. 2012) (alterations in original) (quoting *Walker v. City of Birmingham*, 388 U.S. 307, 314 (1967)).

The party seeking "contempt sanctions bears the burden of proving acts warranting a civil contempt order by clear and convincing evidence." *Id.* If that initial burden is met, the burden shifts to the alleged contemnor to show inability to comply. *Id.* Because civil contempt is a severe remedy, the Court should not employ it if there is doubt regarding the wrongfulness of the alleged contemnor's conduct. *See Taggart v. Lorenzen*, 587 U.S. ___, ___, 139 S. Ct. 1795, 1801 (2019).

The Court "may impose civil contempt sanctions for one of two purposes: to compensate parties aggrieved by contumacious conduct or to coerce compliance with the court's orders." *Chaganti*, 470 F.3d at 1224; *see also Jake's, Ltd., Inc. v. City of Coates*, 356 F.3d 896, 901 (8th Cir. 2004) ("Traditionally, contempt sanctions are civil if they are coercive and remedial, and criminal if they are punitive."). A fine, incarceration, or both, "may accomplish the purpose of coercion." *Chi. Truck Drivers*, 207 F.3d at 505. If "compensation is intended, a fine is imposed, payable to the complainant." *Id.* (quoting *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303-04 (1947)). But if a sanction is meant to coerce a party to comply, the sanction is "payable to the court, rather than to the opposing party." *Chaganti*, 470 F.3d at 1224.

Here, the government contends the Court should hold Widtfeldt in contempt for violating the Order of Sale prohibiting him from discouraging or deterring potential bidders at the sale of his properties. Upon careful consideration of the record in this case, the Court agrees.[5]

The Order of Sale unambiguously instructed Widtfeldt to "not record any instruments, publish any notice, or take any other action (such as running newspaper advertisements, posting signs, or making internet postings) that may directly or indirectly tend to deter or discourage potential bidders from participating in the public auction." The Court expressly warned Widtfeldt violating the terms of the Order of Sale would "be deemed contempt of court and punishable as such." *See Chaganti*, 470 F.3d at 1223 (recognizing the Court's authority to hold a party in civil contempt for failing "to comply with a 'clear and specific' underlying order"). Widtfeldt did so anyway. And he does not deny it.

In determining the appropriate sanction, the Court should consider "'the character and magnitude of the harm threatened by continued contumacy,' 'the probable effectiveness of any suggested sanction in bringing about the result desired,' and 'the amount of [the contemnor's] financial resources and the consequent seriousness of the burden' to that particular party." *Id* at 1224 (quoting *United Mine Workers*, 330 U.S. at 304) (alterations in original).

---

[5]The Court makes this finding without an evidentiary hearing. Widtfeldt, in his numerous filings, has neither requested a hearing nor challenged the government's allegations or evidence. The Court therefore finds Widtfeldt's rights to notice and opportunity to be heard, are satisfied without a hearing. *See Sawyer v. Noah's Ark Processors, LLC*, 4:19-CV-3016, 2019 WL 5268639, *1 n.1 (D. Neb. Oct. 17, 2019) (holding a party in contempt without a hearing where the party did not request a hearing or contest the evidence of disobedience); *see also In re Reed*, 888 F.3d 930, 938 (8th Cir. 2018) (finding the right to an opportunity to be heard does not necessarily require an evidentiary hearing when there are no disputed facts).

Based on those factors, the Court concludes sanctions are warranted. The Court finds Widtfeldt must (1) immediately compensate the government for the thwarted sale ($1,800.57), with a $100 fine per day, starting thirty days from the date this Memorandum and Order is entered, for each day thereafter that Widtfeldt fails to pay that amount without adequate justification, and (2) immediately pay a $5,000 fine for his direct disobedience of the Order of Sale, also subject to a $100 fine per day, starting thirty days from the date of this Memorandum and Order, for each day thereafter that Widtfeldt fails to pay that amount without adequate justification.[6] The $1,800.57 is payable to the government because that amount is meant to compensate the government for costs incurred due to Widtfeldt's contemptuous behavior. The $5,000 fine and $100 daily fines are payable to the Court, however, as those fines are meant to coerce Widtfeldt's compliance with this Memorandum and Order and the Order of Sale.

The Court finds those sanctions appropriate as, here, the harm from Widtfeldt's contumacy is preventing the government from completing the sale ordered by the Court and recovering Widtfeldt's unpaid federal tax liabilities. Further contumacy would have the same effect and continue to defy the Court's direct orders. As noted by the government, "Widtfeldt's contemptuous behavior had the effect he sought," and he "should not be allowed to consolidate his success."

As to the probable effectiveness of these sanctions, the Court seeks to both compensate the government and coerce Widtfeldt's compliance. The Court finds the fines it has imposed, including the daily fines, will encourage Widtfeldt to stop obstructing the sale.

---

[6]The government provided no support for its request that the Court bar future filings and lawsuit, and the Court declines to impose that broad sanction at this time without that support. The government also directed the Court to no case law imposing a daily fine of $1,000, and at this stage, the Court also declines to impose that sanction. With support by the government and if Widtfeldt continues in his contumacy, the Court could be persuaded otherwise in the future.

Finally, the Court has considered Widtfeldt's financial resources and the burden these sanctions would impose. While a full picture of Widtfeldt's financial situation is unclear, Widtfeldt is slated to receive any remaining sale proceeds from his properties. And Widtfeldt can easily avoid the daily fines by simply complying with this Memorandum and Order or otherwise providing adequate justification. *See United States v. Rue*, 819 F.3d 1488, 1490-91 (8th Cir. 1987) (finding the district court did not abuse its discretion in imposing a $100 daily fine in addition to other sanctions).

Any further actions violating or interfering with this Court's orders, such as discouraging potential bidders for the properties, will result in further sanctions, which may include incarceration until the properties are sold. Additionally, if either of the $100 daily fines accumulates to $2,000 without adequate justification, Widtfeldt may be subject to further sanctions, such as incarceration until the properties are sold.

Based on the foregoing,

IT IS ORDERED:
1. The government's motion (Filing No. 52) to hold defendant James Widtfeldt in civil contempt for violating this Court's October 21, 2019, Order of Sale (Filing No. 46) is granted in part and denied in part.
    a. Widtfeldt is held in civil contempt for violating the Order of Sale.
    b. Widtfeldt is ordered to immediately pay:
        i. The costs of the thwarted sale in the amount of $1,800.57, payable to the government. Starting thirty days from the date of this Memorandum and Order, Widtfeldt will be fined $100 per day for each day this amount goes unpaid, payable to the Clerk of Court.
        ii. A $5,000 fine, subject to an additional $100 fine each day this amount goes unpaid, starting thirty days from the date of this Memorandum and Order, both payable to the Clerk of Court.
    c. If either daily fine reaches $2,000 without adequate justification or Widtfeldt further violates this Court's orders, he will be subject to further sanctions.
    d. The government's motion is denied in all other respects.

8

2. To the extent Widtfeldt's filings (Filing Nos. 55-58) are intended as objections rather than simply resistance to the government's motion, those objections are overruled.

Dated this 15th day of June 2020.

                                                BY THE COURT:

                                                Robert F. Rossiter, Jr.
                                                United States District Judge